## Samuel Woods *versus* Franklin Clark.

In an action by the owner against the purchaser, to recover the price of a ship which got ashore on a foreign coast and was sold by auction by the master under circumstances justifying a sale, the defendant offered in evidence two letters, in the handwriting of the master and addressed to the defendant, one dated the day before the sale, requesting the defendant to bid the vessel in for the benefit of all concerned, provided no one should bid higher than a certain sum, the other dated on the day of the sale, requesting the defendant to attempt to get the vessel off and save the materials. The defendant attempted, but without success, to get the vessel off. It was *held*, that the letters were admissible in evidence against the plaintiff, being apparently the declarations of an agent while executing his agency and acting within the scope of his authority, and that the burden was on the plaintiff to show that the purchase was in fact made for the defendant's own benefit and the letters fraudulently fabricated after the defendant had found it impracticable to save the vessel.

Declarations of the master made after the sale and while the defendant was at the wreck, as to the loss being the defendant's in case the vessel should not be got off, and as to the defendant's applying to the master, after his return from the wreck, *to be released from the purchase*, were held *not to be a part of the res gestæ*, and therefore inadmissible in evidence.

A deposition taken in a foreign country under a commission, but returned to court unaccompanied by the commission and interrogatories, was *held* to be inadmissible in evidence.

The drawing of an order by the master, after his return home to the port where the owner lived, upon the defendant, to pay over to a third person, for the benefit of whom it might concern, a balance of the proceeds of materials from the wreck, saved and sold by the defendant, was *held* to be within the scope of the master's agency and before the agency had terminated, and therefore admissible in evidence against the owner.

ASSUMPSIT to recover the price of the wreck and materials of the brig Broome, alleged to have been purchased by the defendant at a sale made by W. P. Foote, the master of the brig, on the 31st of March, 1831. Plea the general issue.

At the trial, before *Wilde* J., the defendant relied on the ground, that he purchased the wreck at the request of the master and for the benefit of whom it might concern.

It appeared that the brig went ashore on Bartola Key, about one hundred and fifty miles from Trinidad de Cuba.

The plaintiff, to sustain the issue on his part, among other evidence, read the deposition of I. W. Lord ; who testified, that the wreck and materials were sold by public auction by Foote, at Trinidad ; that they were bought by the defendant for $ 1660 ; that at the sale it was stated by the defendant or Foote, when they were together, that it was to be a free sale,

for the benefit of underwriters or whom it might concern ; that after the sale the defendant went personally to the vessel to get her off ; that she was not got off ; and that she was consigned to the defendant.

The witness also testified to certain conversation had by him with Foote, while Clark was at the wreck, as to the loss being Clark's, in case the vessel should not be got off ; and also concerning an application made by Foote to him, after Clark's return, for the witness's advice respecting his (Foote's) signing a paper which Clark wanted him to sign, releasing Clark from the purchase ; which testimony was ruled out, on the ground that Foote's acts and declarations were inadmissible.

The defendant offered in evidence two papers, purporting to be letters addressed at Trinidad to the defendant and signed by Foote, bearing date, one, of the 30th of March, the other, of the 31st of March, 1831.. The first authorized the defendant to bid in the vessel for " the benefit of all concerned, provided no one bid higher than $ 1600 or $ 1700 ; " the other authorized him to employ lighters and assistance, and to attempt to get the vessel off and save the materials. The plaintiff objected to the introduction of these letters, (which he alleged to have been fabricated after the failure of the attempt to get the vessel off,) because Foote was a competent witness, and because no proof of the time of their execution and delivery, other than their date, was offered to show that they were a part of the *res gestæ ;* but the judge overruled the objection, on the ground that Foote was the plaintiff's agent, and so the letters were admissible.

The defendant offered in evidence an order from Foote on the defendant, dated Boston, June 28th, 1831, to pay over the balance of the proceeds of materials saved, to one Kendall, to be deposited in a bank for whom it might concern. He also offered an account current between Foote and himself, dated Trinidad, April 23d, 1831. To the admission of each of these papers the plaintiff objected, but the judge admitted them.

The plaintiff then offered on his part a letter to him from Foote, dated Trinidad, April 6th, 1831, stating the whole

circumstances of the wreck and sale, and that "Clark bought the vessel where she is situated, for $ 1660; which I think is as much as could be expected under every circumstance." The plaintiff also offered the note of protest, dated March 30th, 1831, made and signed by Foote at Trinidad, and also the extended protest, dated the 6th of April, to show Foote's contemporaneous declaration that Clark was the real purchaser, on his own account, and so that the papers introduced by the defendant were got up afterwards and collusively; but the judge ruled that the evidence was inadmissible.

The plaintiff also offered the deposition of Joseph Carret, which had been taken under a commission and interrogatories regularly filed and issued, but which had been returned by the magistrate without the commission and interrogatories; and he offered to show by the record, that the commission had been regularly issued to the magistrate, and that the deposition had been regularly taken, sealed up with the seal of the magistrate, returned directed to the court, and duly opened therein and filed. But the judge ruled, that by law the deposition was inadmissible, because the commission and interrogatories were not returned by the magistrate; although the plaintiff offered his copies of the interrogatories, and stated that the deposition was perfectly intelligible without the interrogatories.

A verdict was found for the defendant. The plaintiff moved for a new trial, on the ground that the rulings of the judge in respect to the evidence were erroneous.

*J. Pickering* and *Bartlett*, for the plaintiff. Foote's letter of the 30th of March was not admissible in evidence. He was not the agent of the owner, in the sense which will allow the acts and declarations of an agent to affect the principal. In the case of shipwreck, the master becomes the agent of all parties interested in the vessel, and he is to be treated rather as an officer of the law, than as an agent appointed by the owner. The power of the master was confined to the making of a real and *bonâ fide* sale, and the creation of a subagent to bid in the vessel, was not within the scope of his authority. *General Interest Ins. Co.* v. *Ruggles*, 12 Wheat. 408.

The letter of the 31st of March was inadmissible, because it was not a part of the *res gestæ*. It relates to a distinct con-

Woods
v.
Clark.

tract. *Fairlie* v. *Hastings*, 10 Ves. 126 ; *Langhorn* v. *All-nutt*, 4 Taunt. 511 ; *Thallhimer* v. *Brinckerhoff*, 4 Wendell, 394 ; *Hubbard* v. *Elmer*, 7 Wendell, 446 ; *Rossiter* v. *Rossiter*, 8 Wendell, 494 ; *Framingham Manuf. Co.* v. *Barnard*, 2 Pick. 532.

Neither of the letters was admissible without proof of its being delivered before the failure of the attempt to get the vessel off; nor without proof that it was assented to and acted on by Clark. The master should have been produced as a witness, either with or instead of the letters. *Maesters* v. *Abraham*, 1 Esp. Rep. 375 ; *Blight* v. *Ashley*, 1 Peters's Circ. C. R. 21, 22.

The protest and the master's letter to the plaintiff, were admissible to contradict his letters to the defendant, and to show that the contract set up in the defence, was fraudulent and fabricated.

The order drawn by Foote upon Clark at Boston, on the 28th of June, was inadmissible, being drawn after Foote's agency had terminated, and in the place where the owner resided.

The deposition of Carret was rejected, not in the exercise of the. discretion of the Court upon a foreign deposition, but as being inadmissible in point of law. This was erroneous

*Fletcher*, for the defendant.

*June 19th, 1834.*

MORTON J. delivered the opinion of the Court. Several questions of evidence have arisen in this case, which we have considered.

1. The two letters of March 30th and 31st, being in the handwriting of the captain, are genuine documents and must be presumed to be what they purport to be. We are not at liberty to conjecture that they were made subsequently to the transaction to which they refer and antedated for fraudulent purposes. If the plaintiff would impeach them, the burden of proof is upon him to show the fabrication of the fraud.

2. Being the letters of the captain, written when they bear date, they are competent evidence against the plaintiff.

It is admitted, that a contingency had occurred, which authorized the captain to sell the vessel. The general rule is, that the acts and declarations of an agent while executing his

agency and while acting within the scope of his authority, are in law the acts and declarations of the principal. And being a part of the transaction and essential to a full understanding of it, they are competent evidence for either party. 1 Phil. Ev. (7th ed.) 100 ; 2 Stark. Ev. 60.

There is no foundation for the distinction suggested by the plaintiff's counsel, between an agency created by the operation of law, and one created by the direct acts of the parties. In both cases the source of the authority is the principal. Where the agency grows out of the relation of the parties, and is called into action by some unlooked for contingency, it is the principal who creates the relation and assents to all its legal incidents ; and thus confers the power upon the agent, to perform all such acts as, in any event, the law or his duty may require of him.

It is true that the *acknowledgments* of the agent can never be evidence against his principal. He has no authority to bind his principal by admissions. His declarations are only received when they are a part of the *res gestæ* and because, being a part of the transaction, they are necessary to a proper understanding of it. Subsequent declarations are mere hearsay. 1 Phil. Ev. (7th ed.) 101 ; 2 Stark. Ev. 60 ; *Palethorp* v. *Furnish*, 2 Esp. Rep. 511, note ; *Helyear* v. *Hawke*, 5 Esp. Rep. 74 ; *Peto* v. *Hague*, ibid. 135 ; *Alexander* v. *Gibson*, 2 Campb. 555 ; *Fairlie* v. *Hastings*, 10 Ves. 123 ; *Langhorn* v. *Allnutt*, 4 Taunt. 511 ; *Blight* v. *Ashley*, 1 Peters's C. C. R. 15 ; *Meade* v. *M'Dowell*, 5 Binney, 195 ; *Leeds* v. *Mar. Ins. Co. of Alexandria*, 2 Wheaton, 380 ; *Thallhimer* v. *Brinckerhoff*, 4 Wendell, 394 ; *Hubbard* v. *Elmer*, 7 Wendell, 446 ; *Rossiter* v. *Rossiter*, 8 Wendell, 494

But this rule does not confine the declaration to the point of time when the contract of sale is completed. It embraces acts done, after the bargain is closed, in preparing the necessary evidence of the sale and giving instructions for that purpose, in the delivery of the property, and other acts necessary to complete the transfer. It also looks back to the preparations for the sale ; and includes all the preliminary negotiations ; such as making offers and proposals, and returning answers to them when made by the other party And, whatever is done in ex-

posing the property to sale, by auction or otherwise, in adver tising it when necessary, in directions to the auctioneer when an auction is resorted to, in the employment of servants, to exhibit the property and to make all the usual and proper arrangements for the sale, is incidental to the power to sell, and comes within the rule.

Both the letters are embraced by the above principles. The first one was written with a direct view to the sale, and preparatory to it. It had immediate relation to the sale. And although the act itself might be improper and injurious to the plaintiff, yet upon the question whether any sale was made at all, it has a proper and important bearing. Suppose that while in the act of selling, the captain had withdrawn the property and stopped the sale, could the principal hold the last bidder as the purchaser, and exclude the refusal of the captain to sell? It would avail him very little to say that his agent was authorized to sell, but not to withdraw, and therefore the declarations of withdrawal were unauthorized and not evidence against the principal.

The second letter was written on the very day of the proposed sale and before it was completed by the delivery of possession. It was so interwoven with the acts of the agent in attempting to sell, that it may fairly be deemed a part of the *res gestæ*. Besides, it related to the management and the care of the vessel, which are within the ordinary authority of the captain. If he personally had retained possession of the vessel, broke her up and disposed of the materials, instead of delivering her to the supposed purchaser, it would be competent and strong evidence to show that the latter ought not to be holden to pay for her. Now if he could do this himself, he might employ another to do it.

3. The captain's declarations to Lord some time after the sale, are too remote. They are no part of the negotiations or preparations for the sale. It may not be easy to draw the precise line, but these declarations are manifestly distinguishable from the letters and clearly inadmissible. They are the mere acknowledgments of the agent. *Maesters* v. *Abraham*, 1 Esp. R. 375 ; *Bauerman v. Radenius*, 7 T. R. 665.

4. The deposition of Carret, which was returned without

any commission or interrogatories, was properly rejected. It is true that we have a discretion in relation to the admission of depositions taken out of the State. *St.* 1797, *c.* 35, § 6. But this discretion is directed and regulated by standing rules, which are a law to a judge at *nisi prius.* Besides, if it be in the discretion of the presiding judge, it is not open to revision by the whole Court. This deposition not having been taken according to the spirit or import of the rules, was properly rejected. It may have been fairly taken, but to admit depositions taken in this form, would open a door to dangerous practices. The commission and the interrogatories are indispensable to show that it was taken by the proper person and in a proper manner.

5. The objection to the admission of the order drawn by the master on the defendant, at Boston, cannot prevail. If the master had brought home an anchor, sails, &c., his agency would have continued, so far as concerned those articles, until they were delivered in specie to the owner, or sold and the proceeds paid over. So the drawing of this order for the balance of the proceeds of the materials saved and disposed of by the defendant, was before the master had ceased to be agent, and was competent evidence as an act done within the scope of his authority.

*Judgment on the verdict.*